No. 24-5715

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE SIXTH CIRCUIT

_____

ROSCOE D. ECHOLS
Plaintiff-Appellant,

v.

KENTUCKY JUSTICE AND PUBLIC SAFETY CABINET, ET AL
Defendant-Appellees.

_____

On Appeal from the Decision of the
United States District Court for the
Western District of Kentucky
Bowling Green Division
No. 1:21-cv-000131-GNS-HBB

_____

**BRIEF OF PLAINTIFF-APPELLANT ROSCOE D. ECHOLS**

_____

**ROBERT L. THOMPSON**
OH: 98126
Thompson Legal LLC
10529 Timberwood Circle, Unit B
Louisville, KY 40223
P: 502-366-2121
F: 502-438-9999
Robert@RthompsonLegal.com

*Counsel for Plaintiff-Appellant*

## CORPORATE DISCLOSURE STATEMENT

Pursuant to 6th Cir. R. 26.1.(b)(1), Plaintiff-Appellant makes the following disclosure:

**1.  Is said party a subsidiary or affiliate of a publicly-owned corporation?**

No.

**2.  Is there a publicly-held corporation, not a party to the appeal, that has a financial interest in the outcome?**

No.

# TABLE OF CONTENTS

TABLE OF AUTHORITIES...................................................................iii

STATEMENT IN SUPPORT OF ORAL ARGUMENT................................................1

JURISDICTIONAL STATEMENT............................................................2

    1.    Jurisdiction in the District Court................................................2

    2.    Jurisdiction in the Court of Appeals...........................................2

    3.    Timeliness of Appeal..........................................................2

    4.    Appealable Matter.............................................................2

ISSUES PRESENTED FOR REVIEW........................................................3

    1.    Whether Appellant Roscoe Echols established a genuine issue of material fact to withstand summary judgement......................................3

    2.    Whether Appellant Roscoe Echols has established a prima facie case of racial discrimination....................................................3

    3.    Whether Appellant Roscoe Echols has established a prima facie case of retaliation.................................................................3

STATEMENT OF CASE.................................................................4

    A.    Statement of the Facts........................................................4

        1.    Mr. Echols Was an Outstanding Employee.........................................4

        2.    Mr. Echols Was Wrongly Reprimanded...........................................4

        3.    Mr. Echols Complained About Discrimination...................................6

        4.    Defendant Retaliated Against Mr. Echols........................................6

        5.    Mr. Echols Was Terminated Because of His Race...............................7

    B.    Procedural History............................................................7

SUMMARY OF THE ARGUMENT............................................................8

ARGUMENT .........................................................................9

    A.    Standard of Review............................................................9

    B.    Mr. Echols Established A Genuine Issue of Material Fact........................9

i

1.    Investigation 2721-17 Was Deemed Unfounded Until Ed Jewell
Interfered...............................................................................................9

2.    Juan Soto's Affidavit Establishes a Genuine Issue of Material
Fact for Investigation 2722-17.............................................................10

3.    Juan Soto's Affidavit Establishes a Genuine Issue of Material Fact for
Investigation 2825-19...........................................................................11

C.    Mr. Echols Has Established a Prima Facie Case of
Racial Discrimination.................................................................................12

1.    Mr. Echols has Established a Prima Facie Case of Discrimination
Under the Cat's Paw Theory.................................................................13

2.    Ed Jewell Qualifies as a Supervisor Under the Cat's Paw Theory.........13

3.    Mr. Echols Was Treated Differently Than His Similarly Situated
Caucasian Coworkers............................................................................15

4.    Defendant's Reason For Terminating Mr. Echols is Pretext.................17

D.    Mr. Echols Has Established a Prima Facie Case of Retaliation..................18

CONCLUSION........................................................................................................21

CERTIFICATE OF COMPLIANCE.......................................................................22

CERTIFICATE OF SERVICE................................................................................23

ADDENDUM...........................................................................................................24

# TABLE OF AUTHORITIES

## <u>Cases</u>

*Anderson v. Liberty Lobby, Inc., 106 S. Ct. 2505 (1986)* …………….....…..…*9, 11*

*Babb v. Maryville Anesthesiologists P.C.,* 942 F.3d 308, 320 (6th Cir. 2019)...…..17

*Bar v. Kalitta Charters II LLC,* No. 23-2009, 2024 U.S. App.

    (6th Cir. Aug. 30, 2024) …………………………………………………... 18

*Blizzard v. Marion Tech. Coll.,* 698 F.3d 275, 285 (6th Cir. 2012)……………..… 17

*Craig-Wood v. Time Warner NY Cable LLC,*

    549 F. App'x 505 (6th Cir. 2014)……………………………………...15

*Dayton Techs., Inc. v. ALCOA,* 31 F. App'x 179 (6th Cir. 2002) …………..…… 9

*Fincher v. Depository Trust & Clearing Corp.,*

    604 F.3d 712, 722 (2d Cir. 2010)………………………………..……20

*Jenkins v. Regents of the Univ. of Mich. Health Sys*.,

    763 F. App'x 545 (6th Cir. 2019)……...………………………………12

*Marshall v. Rawlings Co. LLC, 854 F.3d 368 (6th Cir. 2017)* …….…..……….....*13*

*Mitchell v. Toledo Hosp., 964 F.2d 577 (6th Cir. 1992)* …………….…………..*13, 15*

*Seoane-Vazquez v. Ohio State Univ., 577 F. App'x 418, 433 (6th Cir. 2014)….…...20*

*Schuette v. Jackson Cnty.,* No. 18-10497, 2023 U.S. Dist.

    (E.D. Mich. Feb. 1, 2023) …………………………………………... 14

*Vance v. Ball State Univ.,* 133 S. Ct. 2434 (2013) …………………………..14

## <u>Statues</u>

500 KAR § 13:020………………………….…………………………...4, 5

iii

## STATEMENT IN SUPPORT OF ORAL ARGUMENT

Appellant Roscoe Echols does not request an oral argument in this matter.

# JURISDICTIONAL STATEMENT

1. Jurisdiction in the District Court

The district court had jurisdiction to hear this case under 28 U.S.C. § 1331 because Plaintiff asserted claims arising under Title VII of the Civil Rights Act of 1964.

2. Jurisdiction in the Court of Appeals

This Court has jurisdiction to review the district court's final order on Defendant-Appellees' motion for summary judgment, under 28 U.S.C. § 1291.

3. Timeliness of Appeal

The District Court granted Defendant's Motion for Summary Judgement on July 17, 2024. Motion for Summary Judgement, RE 97, Page ID# 1351. Plaintiff filed this appeal timely on August 8, 2024. Notice of Appeal, RE 99, Page ID# 1354.

4. Appealable Matter

Appellant certifies this appeal is from a final order or judgment that disposes of all parties' claims.

## ISSUES PRESENTED FOR REVIEW

1.  Whether Appellant Roscoe Echols established a genuine issue of material fact to withstand summary judgement.

2.  Whether Appellant Roscoe Echols has established a prima facie case of racial discrimination.

3.  Whether Appellant Roscoe Echols has established a prima facie case of retaliation.

## STATEMENT OF CASE

**A.**    **Statement of the Facts**

    1.  <u>Mr. Echols Was an Outstanding Employee.</u>

On March 20, 2015, the Kentucky Department of Juvenile Justice ("KDJJ") hired Mr. Echols, an African American, as a Youth Worker I at the Green River Youth Development Center in Cromwell, KY. Watson Affidavit, RE 68-2, Page ID# 555. His job duties included supervising and monitoring the juveniles, assisting them in interpersonal skills and development and serving as a training mentor for beginning level youth workers. Echols Transcript, RE 68-3, Page ID# 572. Mr. Echols was an outstanding employee who always received positive performance reviews. Exhibit 3, RE 74-3, Page ID# 867. In fact, over time, Mr. Echols advanced through the ranks, being promoted to Youth Worker II, Youth Worker III, and eventually to Youth Worker Supervisor. Watson Affidavit, RE 68-2, Page ID# 556.  Mr. Echols worked for Defendant for years without issue until Defendant began discriminating against Mr. Echols because of his race.

    2.  <u>Mr. Echols Was Wrongly Reprimanded</u>

If a juvenile resident of a KDJJ facility makes an allegation of abuse or neglect, then the Justice and Public Safety Cabinet Internal Investigations Branch ("IIB") is charged under 500 KAR § 13:020 with the responsibility of investigating

the allegation. Jewell Affidavit, RE 68-4, Page ID# 596-597. This branch is supervised by Special Investigative Agent Manager Ed Jewel. *Id*. A hotline is available for making reports. *Id* . The IIB is directed to investigate these reports and determine whether further investigation is warranted. *Id.* Following the investigation, the IIB submits a report for the KDJJ to review and determine what corrective action is warranted. *See* 500 KAR 13:020, §§3-6.

On June 7, 2017, a juvenile called the hotline and falsely alleged that Mr. Echols pushed him. Exhibit B, RE 74-12, Page ID #1029. The IIB opened an investigation designated Investigation Number 2721-17, and originally determined that the allegations were unfounded. *Id* at Page ID# 1031. However, Ed Jewell reopened the investigation and deemed the allegations as substantiated. Exhibit C, RE 68-5, Page ID# 599. During the IIB investigation of Investigation Number 2721-17, an additional false allegation was raised against Mr. Echols that he pushed another youth, and another investigation designated investigation 2722-17 was opened on July 11, 2017. Exhibit E, RE 68-7, Page ID# 651-665. After a brief investigation, the IIB concluded that the allegation was substantiated. Exhibit E, RE 68-7, Page ID# 648. On November 1, 2017, Defendant placed Mr. Echols on suspension effective November 15, 2017. Exhibit H, RE 68-9, Page ID# 698-700.

### 3.  Mr. Echols Complained About Discrimination.

Mr. Echols made two separate complaints to Defendant, stating that he was being discriminated against because of his race. Mr. Echols made a telephone call to IIB on an unknown date between August and November 2017. Memorandum in Opposition of Motion for Summary Judgement, RE 74-1, Page ID# 830-831. In this call Mr. Echols told Mr. Jewell that he disagreed with the decisions in his two investigations and believes that they were motivated by his race and would like a neutral third party to investigate the allegations against him. This request was denied by Mr. Jewell. *Id*. Additionally on September 21, 2017, Mr. Echols wrote a letter to IIB stating that he had grave concerns about the findings and would like to see both reports so that he could verify the claims. Exhibit 21, RE 74-17, Page ID# 1067.

### 4.  Defendant Retaliated Against Mr. Echols.

Following Mr. Echols's complaints, Defendants discriminatory treatment towards him intensified. A juvenile made a hotline complaint that Mr. Echols used excessive force when restraining them. Jewell Affidavit, RE 68-4, Page ID# 597. The IIB opened an investigation designated Investigation 2808-19. *Id.* After a brief investigation, the IIB report concluded that the allegation was substantiated. Exhibit L, RE 68-13, Page ID# 712. On September 7, 2019, Superintendent Gregory Lundy contacted the IIB and requested an investigation into an alleged incident with Mr.

Echols and a juvenile. Exhibit O, RE 68-16, Page ID# 804. This investigation was designated Investigation 2825-19. After a brief investigation IIB concluded that the allegation was substantiated. Exhibit N, RE 68-15, Page ID# 783. At this point, it became clear that Ed Jewell and the IIB were targeting Mr. Echols.

### 5. Mr. Echols Was Terminated Because of His Race.

On January 13, 2020, KDJJ Commissioner LaShana Harris sent Mr. Echols a letter notifying him of the termination of his employment. Exhibit Q, RE 68-18, Page ID# 808-810. Commissioner Harris referred to Mr. Echols four substantiated investigations that had occurred over the period of the last two and half years as the reason for his termination. *Id.*

## B.    Procedural History

Appellant filed his lawsuit in the lower court on February 17, 2021. Complaint, RE 1, Page ID# 1-8. Appellant filed an Amended Complaint on May 5, 2021. Amended Complaint, RE 7, Page ID# 21-64. Appellee moved for summary judgment on August 28, 2023. Motion for Summary Judgement, RE 68, Page ID# 531-532. The trial court granted Appellee's Motion on July 17, 2024, which was a final decision making this issue ripe for appeal. Order, RE 91, Page ID# 1211-1214.

## SUMMARY OF THE ARGUMENT

Mr. Echols presented sufficient evidence to establish a genuine issue of material fact, warranting denial of summary judgment. He has made a prima facie case for both discrimination and retaliation, demonstrating unlawful treatment and subsequent adverse actions in response to his complaints. Furthermore, Mr. Echols is entitled to punitive damages due to the egregious nature of the conduct involved, which justifies further consideration by the Court.

## ARGUMENT

### A.    Standard of Review

This Court should reverse the trial court's decision because Mr. Echols has presented sufficient evidence to establish a genuine issue of material fact. Appeals courts use *de novo* when reviewing a grant of summary judgement. *Dayton Techs., Inc. v. ALCOA*, 31 Fed. Appx. 179, 183

### B.    Mr. Echols Established A Genuine Issue of Material Fact.

Mr. Echols has presented multiple pieces of evidence that establish a genuine issue of material fact regarding the legitimacy of the IIB investigations that were substantiated against him which led to his termination. "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, … **The evidence of the nonmovant is to be believed**, and all justifiable inferences are to be drawn in his favor. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255 (quoting *Adickes*, 398 U.S., at 158-159.)

1.    Investigation 2721-17 Was Deemed Unfounded Until Ed Jewell Interfered.

Upon terminating Mr. Echols, Defendant referenced Investigation 2721-17 as a contributing factor in the decision. Exhibit Q, RE 68-18, Page ID# 808-810. However, Investigation 2721-17 was originally deemed unfounded until an entire month later when Ed Jewell decided to further investigate it. Exhibit B, RE 74-12. Page ID 1031. Following the allegation made on the hotline by Mr. Echols

investigative agent S. Potts, Mr. Potts asked Superintendent Curtis Fincher to review the video footage. *Id*. Mr. Fincher reviewed the video and advised Mr. Potts that "no evidence could be located on the facility video which showed Mr. Echols pushing [Redacted] in the back... Based on the information provided by Mr. Fincher, the report was deemed Unfounded." Exhibit C, RE 68-5, Page ID #600. This is also corroborated by the report of the Nurse who treated the youth following the incident which stated, "no bruising, redness or marks on back". *Id.* at, Page ID# 634.

Defendant alleges that Mr. Echols pushed the youth in the back, however the video does not show any evidence of him pushing the youth, and the nurses report shows no evidence of the youth being pushed either. Exhibit B, RE 74-12, Page ID# 1035. This is a genuine issue of material fact on a deciding factor for Mr. Echols's termination. Summary judgement is not warranted when there is such conflicting evidence in this investigation.

2. Juan Soto's Affidavit Establishes a Genuine Issue of Material Fact For Investigation 2722-17.

While Mr. Echols was under investigation designed to Investigation 2721-17 a second false allegation was made against him, initiating IIB Investigation 2722-17. Exhibit E, RE 68-7, Page ID# 651. After a brief investigation the allegation was substantiated according to the IIB, however the First Affidavit of Juan Soto, a coworker of Mr. Echols who witnessed the incident paints a much different picture.

Soto Affidavit JS, RE 74-14, Page ID# 1050-1051. In the affidavit Mr. Soto states that him and Mr. Echols properly restrained the youth who was acting very aggressively and threatening to kill Mr. Echols's son, and then promptly escorted him to the isolation room. *Id*. This is a stark contrast to what the IIB report which stated that Mr. Echols was angrily pushing the youth around. Exhibit E, RE 68-7, Page ID# 662. As stated in *Anderson*, the evidence of the non-movant is to be believed, and inferences are to be drawn in their favor. Mr. Soto's affidavit regarding the incident is a stark contrast to the findings of IIB Investigation 2722-17. This is a genuine issue of material fact, and therefore should have survived summary judgement.

3. <u>Juan Soto's Affidavit Establishes a Genuine Issue of Material Fact For Investigation 2825-19.</u>

The IIB investigation report for Investigation 2825-19 alleged and substantiated that Mr. Echols used inappropriate or excessive force when restraining a youth. Exhibit N, RE 68-15, Page ID# 783. This is false, the Second Affidavit of Juan Soto states otherwise and his testimony must be believed for the purposes of summary judgement. *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 255 (internal citations omitted). Mr. Soto's affidavit states that in the incident a youth was refusing to follow instructions and was using foul language, despite being ordered the youth was refusing to leave the room he was in.  Soto  Affidavit JS3, RE 74-18, Page ID#

1068. After refusing to comply multiple times Mr. Echols put the youth in the proper grip and with the help of two other employee's was finally able to remove the youth from the room. *Id.* Throughout this incident the youth was dragging the men around and making it extremely difficult for Mr. Echols to maintain his grip, but at no time did Mr. Echols put the youth in an unauthorized grip or use excessive force. *Id.*   Mr. Soto's Affidavit portrays a very different story than was alleged in the IIB investigative report for Investigation 2825-19 and must be taken as true for the purposes of summary judgement.

### C.    Mr. Echols Has Established a Prima Facie Case of Racial Discrimination.

To establish a prima facie case of discrimination, a plaintiff must show that "[he]: (1) is a member of a protected class; (2) was qualified for the position and performed it satisfactorily; (3) suffered an adverse employment action; and (4) was treated differently than similarly situated, non-protected employees, or was replaced by a person outside the protected class." *Jenkins v. Regents of the Univ. of Mich. Health Sys.*, 763 Fed. Appx. 545, 550.

It is undisputed that Mr. Echols is a member of a protected class, was qualified for his position, and suffered an adverse employment action. The issue that was raised by Defendant in Summary Judgement is that Mr. Echols cannot satisfy the fourth and final element in that he cannot demonstrate that he was treated differently

than similarly situated non-minority employees. Findings of Fact Conclusions of Law, RE 84, Page ID# 1167. "Thus, to be deemed 'similarly-situated', the individuals with whom the plaintiff seeks to compare his/her treatment must have dealt with the same supervisor[.]" *Mitchell v. Toledo Hosp.,* 964 F.2d 577, 583. Defendant has attempted to limit Mr. Echols's comparator pool to only Joshua Bell and David Wilkerson, because they were the only other employee's subject to discipline during DJJ Commissioner Lashanda Harris's brief time in office. Watson Affidavit, RE 68-2, Page ID# 555. However, Mr. Echols has a *prima facie* case of Discrimination under the cat's paw theory.

1. <u>Mr. Echols has Established a Prima Facie Case of Discrimination Under The Cat's Paw Theory.</u>

In the employment discrimination context cat's paw refers to a situation in which a biased subordinate uses a formal decisionmaker as a dupe in a deliberate scheme to trigger a discriminatory employment action. *Marshall v. Rawlings Co. LLC*, 854 F.3d 368, 377. "A plaintiff alleging liability under the cat's paw theory seeks 'to hold his employer liable for the animus of a supervisor who was not charged with making the ultimate employment decision.'" *Marshall v. Rawlings Co. LLC*, 854 F.3d 368, 377 (internal citations omitted). In Mr. Echols's case Special Investigative Agent Manager Ed Jewel is this supervisor under the cat's paw theory.

2. <u>Ed Jewell Qualifies as a Supervisor Under The Cat's Paw Theory.</u>

13

In the world of employment discrimination, "an employee is a 'supervisor' for purposes of vicarious liability under Title VII if he or she is empowered by the employer to take tangible employment actions against the victim, *Vance v. Ball State Univ.*, 570 U.S. 421, 424. The term tangible employment action "encompasses any 'significant change in employment status . . . or a decision causing a significant change in benefits.'" *Schuette v. Jackson Cty.,* No. 18-10497, 2023 U.S. Dist. LEXIS 16900, at *6 (E.D. Mich. Feb. 1, 2023)(citations omitted).

Ed Jewell is the Special Investigative Agent Manager for the IIB; he oversees all IIB investigations and then reports his findings to the KDJJ so they can take corrective action. Jewell Affidavit, RE 64-4, Page ID# 596. Therefore, while Ed Jewell is not the final decisionmaker, he is still a supervisor under the cat's paw theory because his reports to the KDJJ determine what corrective action will be taken against employee's who's IIB investigations have been substantiated. *Id*. Unlike LaShonda Harris, who only supervised two employees who were subject to reprimands, Ed Jewell has supervisory power over all KDJJ employees at multiple locations for the entire period of Mr. Echols's employment. Motion for Summary Judgement, RE 68-1, Page ID# 546 ; Jewell Affidavit, RE 68-4, Page ID# 596. This significantly expands Mr. Echols's comparator pool beyond the small pool of Lashanda Harris's of comparators that he was confined to on Summary Judgement.

14

3.  <u>Mr. Echols Was Treated Differently Than His Similarly Situated Caucasian Coworkers.</u>

There are numerous Youth Workers employed by the KDJJ with records significantly worse than Mr. Echols who have not faced termination or were only terminated because their substantiated violations were more severe and extended over a longer period. Exhibit D, RE 74-8, Page ID# 1002. Despite committing more egregious offenses, these workers were allowed to continue working while Mr. Echols was singled out. *Id.* Additionally, Mr. Echols alleges that the IIB has elected to not investigate multiple incidents of abuse and neglect towards juveniles due to the employees being Caucasian.

To be deemed a comparator one must be "'subject to the same standards and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it.'" *Craig-Wood v. Time Warner NY Cable LLC,* 549 Fed. Appx. 505, 509-510 (quoting *Mitchell*, 964 F.2d at 583.).

Nathenial Lumpkins, a Caucasian, is an employee that worked for the KDJJ during the same period that Mr. Echols did and performed the same job duties, however he was not subject to the same treatment as Mr. Echols due to his race. Exhibit D, RE 74-8, Page ID# 1003. Mr. Lumpkins has an extensive list of violations that he committed during his employment. *Id*. However he did not face termination until his sixth substantiated IIB investigation. Exhibit 5, RE 74-5, Page ID# 1221.

15

Additionally, Mr. Lumpkin's violations are significantly more grievous than the false allegations against Mr. Echols. In IIB Investigation 2746-18 Mr. Lumkins punched a youth in the head multiple times, however his investigation was deemed exonerated. *Id.* at, Page ID# 1295. Additionally, in Investigation 2728-17 Mr. Lumpkins spit on a juvenile and then proceeded to use overwhelmingly excessive force on a juvenile who was still recovering from a gunshot wound. *Id*. at, Page ID# 1226. At the conclusion of this investigation Mr. Lumpkins was again exonerated. *Id*. at Page ID# 1223. You can also see that Ed Jewell was the one who signed off on this investigation. *Id*. at, Page ID# 1241. Mr. Lumkins also used excessive force in Investigation 2761-18. *Id*. at, Page ID# 1341. Mr. Lumkins even went so far to break the arm of one juvenile in Investigation 2747-18. *Id*. at Page ID# 1343. Despite all of these investigations, it took almost twice the number of investigations against Mr. Lumkins than Mr. Echols had before Defendant even entertained the idea of terminating Mr. Lumkins. Exhibit 5, RE 74-5, Page ID# 1221. Both Mr. Lumkins and Mr. Echols performed the same job duties; however, Mr. Echols was terminated for far fewer violations than Mr. Lumkins, who engaged in abusive conduct, including breaking youths' arms and punching them in the face.

Earl Henderson, a Caucasian, is another employee of the KDJJ who performed the same job duties as Mr. Echols and was subject to the same investigatory process under Mr. Jewell. Exhibit D, RE 74-8, Page ID# 1002. Earl Henderson was involved

16

in 12 IIB investigations during his employment with the KDJJ, which is 8 more than what Mr. Echols was substantiated with, yet he was allowed to keep working for Defendant. *Id.* Another employee of the KDJJ who performed the same duties as Mr. Echols, Jason Johnson, a Caucasian, improper restraints against juveniles but was never investigated by Ed Jewell and the IIB. Exhibit J4, RE 74-6, Page ID# 992-993.

There are additional employees that were never investigated, but the documents are not available for the purpose of appeal. However, these examples alone display how Mr. Echols was treated differently by Ed Jewell and the IIB compared to his Caucasian counterparts.

### 4. Defendant's Reason For Terminating Mr. Echols is Pretext.

An employee "can show that an employer's explanation was pretextual in three interrelated ways: (1) that the proffered reasons had no basis in fact, (2) that the proffered reasons did not actually motivate the employer's action, or (3) that they were insufficient to motivate the employer's action." *Babb v. Maryville Anesthesiologists P.C.*, 942 F.3d 308, 320 (6th Cir. 2019) (internal quotation marks omitted). Essentially the "three-part test need not be applied rigidly," because pretext is a "commonsense inquiry: did the employer fire the employee for the stated reason or not?" *Blizzard v. Marion Tech. Coll.,* 698 F.3d 275, 285 (6th Cir. 2012) (internal citations omitted).

Mr. Echols's case displays pretext in two of these three manners. First the proffered reasons have no factual basis, Mr. Echols has denied committing the allegations against him and believes that the investigations have been falsified. Second, Mr. Echols only had four substantiated investigations against him and was terminated, while Nathenial Lumkins and Earl Henderson were allowed to stay employed after committing significantly more violations and have these investigations substantiated against them. Exhibit D, RE 74-8, Page ID# 1002. Defendant terminated Mr. Echols because of his race, their reason for his termination is pretext. Caucasian employees have remained employed after many more substantiated investigations against them.

**D.    Mr. Echols Has Established a Prima Facie Case of Retaliation.**

Mr. Echols has established enough facts to prove a prima facie case of retaliation. To prove a prima facie case of retaliation one must prove that " (1) engaged in a protected activity; (2) his exercise of such protected activity was known by the defendant; (3) the defendant subsequently took an action that was materially adverse to the plaintiff; and (4) a causal connection existed between the protected activity and the materially adverse action." *Bar v. Kalitta Charters II LLC*, 2024 U.S. App. LEXIS 22216, *4

Mr. Echols has engaged in two protected activities. Mr. Echols made a telephone call to IIB on an unknown date between August and November 2017.

Echols Transcript, RE 68-3, Page ID# 576. In this call Mr. Echols told Mr. Jewell that he disagreed with the decisions in his two investigations and believes that they were motivated by his race and would like a neutral third party to investigate the allegations against him. *Id.* This request was denied by Mr. Jewell. *Id*. Additionally on September 21, 2017, Mr. Echols wrote a letter to IIB stating that he had grave concerns about the findings and would like to see both reports so that he could verify the claims. Exhibit 21, RE 74-17, Page ID# 1067.

Mr. Jewell was aware of these protected activities because they were both directed towards him. In response to these complaints Defendant took three adverse employment actions against Mr. Echols. On July 2, 2019, the IIB opened an investigation designated Investigation 2808-19. Exhibit L, RE 68-13, Page ID# 712. After a brief investigation the IIB report concluded that the allegation was substantiated. *Id*. On September 7, 2019, the IIB opened another investigation against Mr. Echols. This investigation was designated Investigation 2825-19. Exhibit N, RE 68-15, Page ID# 761. After a brief investigation IIB concluded that the allegation was substantiated. *Id.* On January 13, 2020, KDJJ Commissioner LaShana Harris sent Mr. Echols a letter notifying him of the termination of his employment. Exhibit Q, RE 68-18, Page ID# 808-809. Commissioner Harris referred to Mr. Echols four substantiated investigations that had occurred over the period of the last two and half years as the reason for his termination.

In addition to the direct retaliatory actions taken by Defendant, the failure to conduct a neutral investigation into Mr. Echols' complaints constitutes further evidence of retaliation. Courts have recognized that "[a] failure to investigate a complaint can constitute an act of retaliation under some circumstances—for example, if the failure is in retaliation for some separate, protected act by the plaintiff." *Seoane-Vazquez v. Ohio State Univ.,* 577 F. App'x 418, 433 (6th Cir. 2014). In *Fincher v. Depository Trust & Clearing Corp* the court held that a failure to investigate may be considered retaliatory if it is in response to a plaintiff's separate, protected activity. *Fincher v. Depository Trust & Clearing Corp.*, 604 F.3d 712, 722 (2d Cir. 2010). In this case, Mr. Echols engaged in two protected activities; (1) he made complaints regarding discriminatory treatment and (2) requested an independent investigation into the allegations against him. Instead of addressing these complaints, Defendant not only failed to investigate but also initiated new investigations aimed at substantiating further allegations against Mr. Echols, ultimately leading to his termination.

This conduct mirrors the circumstances in *Seoane-Vazquez*, where the court held that the failure to investigate a complaint was treated as a retaliatory action. By refusing to investigate Mr. Echols' valid complaints and instead using the uninvestigated complaints to justify adverse actions, Defendant's behavior fits within this framework of retaliation. Accordingly, Defendant's inaction in response

to Mr. Echols' requests for a neutral review, coupled with subsequent adverse employment actions, demonstrates a causal connection between his protected activities and the materially adverse actions taken against him.

Mr. Echols has shown a prima facie case of retaliation through Defendant's false investigations, termination, and failure to investigate his complaints. These actions are directly linked to his protected activities. The evidence demonstrates a clear causal connection between his complaints and the adverse actions taken

## CONCLUSION

Accordingly, this Court should reverse the Trial Court's order dismissing Plaintiff-Appellant Echols's action because he has established a genuine issue material fact, a prima facie case of racial discrimination, and a prima facie case of retaliation.

Respectfully Submitted,

/s/ Robert L. Thompson
**Robert L. Thompson** (KY: 98791)
THOMPSON LEGAL LLC
10529 Timberwood Circle, Unit B
Louisville, Kentucky 40223
P: 502-366-2121
F: 502-438-9999
E: Robert@RthompsonLegal.com
*Attorney for Appellant*

## CERTIFICATE OF COMPLIANCE

I hereby certify pursuant to Fed. R. App. P. 32(g) that the foregoing brief complies with the word count limitation. As determined by the word count feature in Microsoft Word, the brief contains 4,775 words.

## CERTIFICATE OF SERVICE

I, Robert Thompson., certify that this brief was served upon Appellees' Counsel via this Court's electronic notification system, as well as email, on this 21st day of October 2024.

***/s/ Robert L. Thompson***

**ADDENDUM**

Pursuant to 6 Cir. R. 30(g)(1), Plaintiff-Appellant hereby designates the following documents from the district court record as relevant to this appeal.

| Record # | Description | Page ID |
|:---:|:---|:---:|
| 68-2 | Watson Affidavit | 555-558 |
| 68-3 | Echols Transcript | 559-595 |
| 74-3 | Exhibit 3 | 867-873 |
| 74-1 | Memorandum in Opposition of Motion for Summary Judgement | 830-858 |
| 68-4 | Jewell Affidavit | 596-598 |
| 74-12 | Exhibit B | 1029-1035 |
| 68-5 | Exhibit C | 599-645 |
| 68-7 | Exhibit E | 648-695 |
| 68-9 | Exhibit H | 698-700 |
| 74-17 | Exhibit 21 | 1067 |
| 68-13 | Exhibit L | 712-758 |
| 68-16 | Exhibit O | 804-805 |
| 68-18 | Exhibit Q | 808-810 |
| 1 | Complaint | 1-8 |

| 7 | Amended Complaint | 21-64 |
|---|---|---|
| 68 | Motion for Summary Judgement | 531-532 |
| 91 | Order | 1211-2114 |
| 74-14 | Soto Affidavit JS | 1050-1051 |
| 68-15 | Exhibit N | 761-803 |
| 74-18 | Soto Affidavit JS3 | 1068 |
| 84 | Findings of Fact Conclusions of Law | 1167 |
| 74-8 | Exhibit D | 1002-1003 |
| 74-5 | Exhibit 5 | 1221-1343 |
| 74-6 | Exhibit J4 | 992-995 |