NO. 24-5715

# UNITED STATES COURT OF APPEALS
# FOR THE SIXTH CIRCUIT

---

ROSCOE ECHOLS, *Appellant*

v.

KENTUCKY JUSTICE AND PUBLIC SAFETY CABINET,  et al., *Appellees*.

---

ON APPEAL FROM THE UNISTED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF KENTUCKY
Civil Action No. 1:21-CV-00031-GNS-HBB
Hon. Greg N. Stivers, United States District Judge

---

**BRIEF OF DEFENDANT – APPELLEES**
**KENTUCKY JUSTICE AND PUBLIC SAFETY CABINET,**
**KENTUCKY DEPARTMENT OF JUVENILE JUSTICE,**
**MIRANDA RODGERS GRAY, ED JEWELL, AND CYNTHIA WATSON**

---

William F. Codell
Kentucky Justice and Public Safety Cabinet
125 Holmes Street, Second Floor
Frankfort, Kentucky 40601
Telephone: (502) 226-0399
William.Codell@ky.gov
*Counsel for Appellees*
*Kentucky Justice and Public Safety Cabinet,*
*Kentucky Department of Juvenile Justice,*
*Miranda Rodgers Gray, Ed Jewell, and Cynthia Watson*

## **CORPORATE DISCLOSURE**

Pursuant to 6 Cir. 26.1, the Appellees are not corporate entities and no publicly

owned corporation has any financial interest in the outcome of this matter.

/s/ William F. Codell
COUNSEL FOR APPELLEES

# TABLE OF CONTENTS

CORPORATE DISCLOSURE.................................................................. ii

TABLE OF CONTENTS ..................................................................... iii

TABLE OF AUTHORITIES...................................................................v

STATEMENT OF ORAL ARGUMENT ....................................................1

INTRODUCTION ...............................................................................1

STATEMENT OF ISSUES ....................................................................1

STATEMENT OF THE CASE.................................................................2

   I.  Factual Background.....................................................................2

   II.  Procedural History....................................................................12

STANDARD OF REVIEW ..................................................................14

SUMMARY OF THE ARGUMENT ........................................................15

ARGUMENT ..................................................................................16

   I.  The Appeal Against Miranda Rodgers Gray, Ed Jewell, and Cynthia Watson is Frivolous.................................................................................16

   II.  The District Court Properly Granted Summary Judgment to KDJJ, Because There Were No Genuine Issues of Material Fact....................................18

     A.   Video Evidence Conclusively Established the Factual Basis for the IIB Investigations. ...............................................................................18

     B.   Echols's Attempts to Create Factual Disputes Through Affidavits Fail. .21

   III.  Echols Fails to Establish a Prima Facie Case of Racial Discrimination.....21

     A.   Echols Fails to Identify Similarly Situated Comparators. ......................21

     B.   The "Cat's Paw" Theory Does Not Apply. ...............................................26

   IV.  Echols Fails to Establish a Prima Facie Case of Retaliation.....................28

     A.   Echols Did Not Engage in Protected Activity. .........................................28

     B.   There is No Causal Connection Between Any Protected Activity and the Adverse Employment Actions. .........................................................29

CONCLUSION ................................................................................29

CERTIFICATE OF COMPLIANCE .......................................................31

CERTIFICATE OF SERVICE ...................................................................................31

DESIGNATION OF RELEVANT DISTRICT COURT DOCUMENTS................32

# TABLE OF AUTHORITIES

**Cases**                                                                      **Page(s)**

*Anderson v. Liberty Lobby, Inc.*,
    477 U.S. 242, 252 (1986) ...................................................................................21

*Celotex Cor. v. Catrett*,
    477 U.S. 317, 322 (1986)...................................................................................14

*Jackson v. VHS Detroit Receiving Hosp., Inc.*,
    814 F.3d 769, 779-80 (6th Cir. 2016) ................................................................23

*Kitchen v. Whitmer*,
    106 F.4th 525, 536 (6th Cir. 2024)) ........................................................... 16, 27

*Mitchell v. Toledo Hosp.*,
    964 F.2d 577, 583 (6th Cir. 1992) ........................................................21, 23, 25

*Nguyen v. City of Cleveland*,
    229 F.3d 559, 563 (6th Cir. 2000) (citation omitted) .........................................28

*Scott v. Harris*,
    550 U.S. 372, 380, 378-381 (2007)) ........................................................... 18,21

*Shreve v. Franklin Cty., Ohio*,
    743 F.3d 126, 132 (6th Cir. 2014)......................................................................19

*Staub v. Proctor Hosp.*,
    562 U.S. 411, 415-416 (2011) ...........................................................................27

*Summers v. Leis*,
    368 F.3d 881, 885 (6th Cir. 2024).....................................................................14

*Wathen v. Gen. Elec. Co.*,
    115 F.3d 400, 406 (6th Cir. 1997)) ............................................................ 15,17

*White v. Baxter Healthcare Corp.*,
    533 F.3d 381, 391 (6th Cir. 2008)..................................................................21-22

**Statutes**

Kentucky Revised Statutes, KRS 15A.020(1)(c).....................................................12

KRS 18A.095(7) ........................................................................................23

**Other Authorities**

Fed.R.App.P. 3(c) ...................................................................................17

500 KAR 13:020 ..............................................................................2,3, 29

KDJJ Policy 104 IV.U. ......................................................................5,6

KDJJ Policy 106.6 IV.B...........................................................................10

KDJJ Policy 324 IV.C.1.(b) and (c)......................................................... 6

Title VII of the Civil Rights Act of 1964............................................ 14-17, 28,30

42 U.S.C.  § 2000e-2(a)(1)....................................................................16

## STATEMENT OF ORAL ARGUMENT

Appellees Kentucky Justice and Public Safety Cabinet, Kentucky Department of Juvenile Justice ("KDJJ"), Miranda Rodgers Gray, Ed Jewell, and Cynthia Watson do not believe that oral argument is necessary in this case. Several independent reasons exist for the District Court's Judgment to be affirmed, and the issues presented can be adequately addressed based on the briefs and record.

## INTRODUCTION

This is an appeal from an Order of summary judgment finding as a matter of law that the Appellant Roscoe Echols, a juvenile detention officer terminated for use of excessive force against youths in his custody on four separate occasions, did not suffer discrimination based on his race. Reviewing all evidence, the trial court found: 1) no evidence of direct discrimination; 2) no evidence of circumstantial discrimination because, of the two comparators Echols identified, there was no evidence they received more lenient treatment for similar violations of agency policy; and 3) no evidence of retaliation because Echols had neither engaged in protected activity nor shown the decision maker's knowledge of the alleged protected activity. The judgment should be affirmed.

## STATEMENT OF ISSUES

1.    Whether the District Court properly granted summary judgment when Echols failed to demonstrate genuine issues of material fact regarding his

termination from employment with the KDJJ as a result of four (4) substantiated incidents of using excessive force against juveniles in KDJJ custody.

2.      Whether the District Court correctly held that Mr. Echols failed to establish a prima facie case of racial discrimination.

3.      Whether the District Court properly dismissed Mr. Echols's retaliation claim for failure demonstrate protected activity and causal connection.

## STATEMENT OF THE CASE

### I.      Factual Background

On March 20, 2015, KDJJ hired Echols as a Youth Worker I.  (Affidavit of Cynthia Watson, RE 68-2, Page ID # 555.)  Echols was hired to work at the KDJJ's Green River Youth Development Center, which is in Cromwell, Kentucky.  (Watson Affidavit, RE 68-2, Page ID # 555.)  Youth that have been adjudicated or convicted for committing crimes live at Youth Development Centers operated by the KDJJ, and Youth Worker I employees supervise and monitor the activities of youth at the Youth Development Centers.  (Transcript of Echols Deposition, RE 68-3, Page ID # 572-573.)

Occasionally, youth residing at KDJJ Youth Development Centers make allegations of abuse or neglect against KDJJ employees.  Under 500 KAR 13:020, the Internal Investigations Branch ("IIB") is responsible for investigating allegations of abuse or excessive force in the restraint of a youth at KDJJ facilities.  (Affidavit

of Ed Jewell, RE 68-4, Page ID # 596.)  The IIB is part of the Justice and Public Safety Cabinet and is separate and independent from the KDJJ.  500 KAR 13:020. A toll-free phone number is made available to all youth at KDJJ facilities to report incidents.  This toll-free number is known as the "IIB Hotline".  (Jewell Affidavit, RE 68-4, Page ID # 596.)

On or about June 7, 2017, a youth called the IIB Hotline and alleged that Echols unjustifiably pushed the youth in the back.  (*Id.*, Page ID # 597.)  This resulted in the start of an IIB investigation that is referred to as IIB Investigation Number 2721-17.  (*Id.*, Page ID # 597.)  During the investigation, IIB reviewed video of the incident in which Echols shoved the youth in the back.  The video was captured by the security camera system at the Youth Development Center.  (IIB Investigative Report 2721-17, RE 68-5, Page ID # 602.)

Additional steps taken by the IIB during its investigation included interviewing witnesses and reviewing incident report documentation regarding Echols shoving the youth in the back.  (*Id.*, Page ID # 600 - 602.)  At the conclusion of the investigation, the IIB substantiated the allegation that Echols unjustifiably pushed the youth in the back.  (*Id.*, Page ID # 610.)

After the IIB substantiated the allegation, the Superintendent for the KDJJ facility where Echols worked prepared a Major Corrective Action Request ("MCAR") regarding Echols.  The MCAR was submitted to the KDJJ Commissioner

by way of a Memo dated September 17, 2017.  (MCAR, RE 68-6, Page ID # 646 – 647.)

During the course of IIB Investigation 2721-17, several youths stated that there was another incident in which Echols shoved a different youth in the back. This resulted in the initiation of another IIB Investigation that is referred to as IIB Investigation Number 2722-17.  (Jewell Affidavit, RE 68-4, Page ID # 597.)  During the investigation, the IIB reviewed video of the second incident in which Echols shoved another youth in the back.  (IIB Investigative Report 2722-17, RE 68-7, Page ID # 651 - 654.)  Additional steps taken by the IIB during its investigation of the second incident included interviewing witnesses regarding Echols shoving another youth in the back.  (*Id.*, Page # 651.)

At the conclusion of the second investigation, the IIB substantiated the allegation that Echols pushed another youth in the back.  The IIB additionally found that Echols unjustifiably restrained the youth, because the youth was not a threat to anyone at the time Echols restrained the youth.  Instead, the youth was simply being rude by using curse words, and Echols responded by pushing the youth in the back and then unjustifiably restraining the youth.  (*Id.*, Page ID # 663.)

Echols responded to IIB substantiating the excessive force claims by calling IIB on the phone to express his disagreement with the outcome.  When Echols called IIB, he spoke with Appellee Ed Jewell, who is a manager at IIB.  (Echols Deposition,

RE 68-3, Page ID # 577 – 578; Jewell Affidavit, RE 68-4, Page ID # 596.)  During the phone call with Mr. Jewell, Mr. Echols expressed general disagreement with the outcome of the two (2) investigations that had been substantiated for excessive force at that time.  (Echols Deposition, RE 68-3, Page ID # 575 – 579.)  Echols additionally sent a letter to IIB in September of 2017.   In the letter, Echols expressed disagreement with the outcome of the investigations.  (Echols Deposition, RE 68-3, Page ID # 578 – 579.)

After the IIB substantiated the allegations, the Superintendent for the KDJJ facility where Mr. Echols worked prepared a second MCAR regarding Echols.  The second MCAR was submitted to the KDJJ Commissioner by way of a Memo dated September 17, 2017.  (MCAR Memo, RE 68-8, Page ID # 696 – 697.)

In response to both of the MCARs for the two (2) substantiated excessive force incidents, the KDJJ suspended Echols for one (1) day without pay.  Echols was informed of the suspension by way of a letter dated November 1, 2017.  (Suspension Letter, RE 68-9, Page ID # 698 – 699.)  The suspension letter cites KDJJ Policy 104 IV.U. as a policy that was violated by Echols's misconduct.  Section IV.U. of Policy 104 states as follows:

> Staff shall protect the individual safety of youth and themselves through the use of **approved controlling techniques** utilizing no more than the absolute amount of force necessary to diffuse a confrontational situation.  Staff shall **only use controlling techniques in which they have been certified by the Division of Professional Development**.

(KDJJ Policy 104 IV.U., RE 68-10, Page ID # 703 (emphasis added).)

At the beginning of his employment at the KDJJ, Echols learned that the only controlling technique approved for use by the KDJJ in restraining youth is a martial arts technique called Aikido. (Echols Deposition, RE 68-3, Page ID # 570 - 571.) Pushing a youth in the back is not trained as Aikido and is not a KDJJ approved restraint technique. (Affidavit of KDJJ Training Director William Campbell, RE 68-11, Page ID # 705.)

The suspension letter additionally cites KDJJ Policy 324 as a policy that was violated by Echols. (Suspension Letter, RE 68-9, Page ID # 698 – 699.) Sections IV.C.1.(b) and (c) of Policy 324 state that "[s]taff shall not use physical restraint as punishment" and "[s]taff shall use only the level of physical restraint necessary to control aggressive behavior until the youth is able to demonstrate self-control." (Policy 324, RE 68-12, Page ID # 707.) Echols knew that it was a violation of KDJJ Policy 324 to use a physical restraint on a youth as punishment and to physically restrain a youth for merely saying something rude or inappropriate such as curse words. (Echols Deposition; RE 68-3, Page ID # 584 – 588.)

However, new allegations of Echols engaging in unjustified restraints and using excessive force were made. In particular, the IIB received a call on the IIB Hotline from a youth alleging that Echols had used excessive force and injured the youth's left arm during a restraint. This resulted in the initiation of an IIB

investigation that is referred to as IIB Investigation Number 2808-19. (Jewell Affidavit, RE 68-4, Page ID # 597.) Appellee Miranda Rodgers Gray was employed as an investigator by IIB, and she conducted the investigation. (IIB Investigative Report 2808-19, RE 68-13, Page ID # 712 – 713.) During the investigation, the IIB reviewed video of the incident in which Echols used excessive force in the restraint of a youth. (*Id.*, Page ID # 712 – 715.) Additional steps taken by the IIB during its investigation included interviewing witnesses, reviewing incident report documentation regarding the excessive force restraint, and reviewing medical documentation for the youth that was restrained. (*Id.*, Page ID # 713.)

At the conclusion of its investigation, the IIB again substantiated the allegation that Echols used excessive force while restraining a youth, because the restraint continued after the youth had stopped any resistance. Further, Echols's hand placement on the youth's arm during the restraint was not pursuant to an approved aikido technique and injured the arm. (*Id.*, Page ID # 720 - 721.)

After the IIB substantiated the allegations, the Superintendent for the KDJJ facility where Echols worked prepared another MCAR. The MCAR was submitted to the KDJJ Commissioner by way of a Memo dated November 19, 2019. (MCAR, RE 68-14, Page ID # 759 – 760.)

While Investigation Number 2808-19 for excessive force was pending, the IIB received another report on the IIB Hotline regarding Echols. Specifically, on or

about September 7, 2019, the IIB received a call from the Superintendent of the KDJJ facility where Echols worked, and the Superintendent was concerned that Echols had engaged in yet another incident of excessive force in the restraint of a different youth.  This resulted in the initiation of an IIB investigation that is referred to as IIB Investigation Number 2825-19.  (Jewell Affidavit, RE 68-4, Page ID # 597.)

During the investigation, the IIB reviewed video of the incident in which Echols again used excessive force in the restraint of another youth.  The restraint was particularly troubling, because Echols ran into a room and restrained a youth that was laying down on two chairs.  The youth was not hurting anyone or damaging property when Echols yanked the youth up off the chairs and restrained the youth. (IIB Investigative Report Number 2825-19, RE 68-15, Page ID # 763.)  In addition to reviewing video of the youth restraint, IIB interviewed witnesses for the incident. (*Id.*, Page ID # 762.)

At the conclusion of its investigation, the IIB substantiated the allegation that Echols again used excessive force while restraining another youth, because Echols did not give the youth a chance to comply with any verbal instructions before pulling the youth off the chairs that the youth was laying down on and then physically restraining the youth.  The IIB additionally found that Echols continued the restraint after the youth had stopped any resistance.  (*Id.*, Page ID # 783 – 785.)

After the IIB substantiated the allegations, the Superintendent for the KDJJ facility where Echols worked prepared another MCAR. The Superintendent at the time was KDJJ employee Greg Lundy. The MCAR was submitted to the KDJJ Commissioner by Lundy via a Memo dated November 19, 2019. (MCAR, RE 68-16, Page ID # 804.)

In reviewing requests for employee discipline, the KDJJ has several discipline options, including written reprimands, suspensions, demotions, and dismissals from employment. The KDJJ has a practice of progressive discipline. (Watson Affidavit, RE 68-2, Page ID # 556 – 557.) Under the practice of progressive discipline, the KDJJ attempts to start with less severe forms of discipline for employees that have a clean record and no past issues. Repeat offenders with a history of discipline are more likely to receive more severe forms of discipline, particularly in circumstances where the history of discipline is for the same type of misconduct as any present discipline issue. (Watson Affidavit, RE 68-2, Page ID # 556 – 557.)

After the IIB substantiated the additional instances of unjustified restraints with excessive force by Echols, KDJJ Deputy Commissioner George Scott considered the MCARs and recommended that Echols be dismissed. Factors considered by Deputy Commissioner Scott in recommending the dismissal included Echols's history of discipline for similar misconduct and the severity of Echols's use of excessive force in unjustified restraints. (Affidavit of Deputy Commissioner

Scott, RE 68-17, Page ID # 806.)  The KDJJ Commissioner at the time, LaShana Harris, agreed with Deputy Commissioner Scott's recommendation, and a dismissal letter was issued to Echols in January of 2020.  (Dismissal Letter, RE 68-18, Page ID # 808 – 809.)

The Superintendent who prepared the MCARs requesting the discipline (Greg Lundy), the Deputy Commissioner that recommended Echols's dismissal (George Scott), and the Commissioner that made the decision to dismiss Mr. Echols (LaShana Harris) are all African American.  (Echols Deposition, RE 68-3, Page ID # 580 – 581 and Page ID 595.)  After he was dismissed from employment, Echols initiated this case in which he alleges that his dismissal was based on discrimination because he is African American.

The KDJJ's Equal Employment Opportunity Policy is KDJJ Policy 106.6. (Policy 106.6, RE 68-19, Page ID # 811 – 813.)  Section IV.B. on the first page of KDJJ Policy 106.6 provides that "Equal Employment Opportunity (EEO) shall be available to all applicants and employees regardless of race, color, national origin, sex, age, religion, veteran status, genetic information, disability, political affiliation, sexual orientation, gender identity, or ancestry." (*Id.*, Page ID # 811.)  Furthermore, Section IV.H. on the second page of KDJJ Policy 106.6 provides as follows:

> A staff who suspects or believes that they have been subject to EEO violation shall consult with the appropriate EEO Counselor or the Department EEO Coordinator.  Staff are encouraged to complete the

Justice and Public Safety Cabinet's EEO Complaint Form (addendum to this policy) to report any EEO violation.

(*Id.*, Page ID # 812.)

Echols was aware of the KDJJ's EEO Policy, including the requirement to report EEO violations and the availability of the EEO Complaint Form. Echols signed a KDJJ Equal Employment Opportunity and Anti-Harassment Policies Receipt Acknowledgement to document his understanding of the KDJJ's EEO Policy. (EEO Policy Receipt Acknowledgement, RE 68-20, Page ID # 816.) Despite his knowledge of the KDJJ's EEO Policy and its requirement to report EEO violations, Echols never provided any written statement or written complaint to the KDJJ alleging any discrimination. (Echols Deposition, RE 68-3, Page ID # 589 – 591.) Echols did not use the EEO Complaint Form. Echols alleges that he told someone at the KDJJ about discrimination complaints, but Echols does not remember exactly who it was that he talked to about discrimination. (Id., Page ID # 589 – 591.)

During his deposition for this case, Echols admitted that he does not know if anyone at the KDJJ is racist. (*Id.*, Page ID # 574.) Echols never heard anyone that worked at the KDJJ say something that was racist. (*Id.*, , Page ID # 575.) Echols does not remember anyone telling him that they heard somebody else say something racist at the KDJJ. (*Id.*, Page ID # 575.)

11

## II.    Procedural History

On February 17, 2021, Echols filed suit against KDJJ.  In his Complaint, Echols alleges that his dismissal from KDJJ was based on discrimination because he is African American.  (Complaint, RE 1; Amended Complaint, RE 7.)  He further alleges that his dismissal was based on retaliation for voicing his disagreement with the outcome of the first two (2) IIB investigations that substantiated allegations of excessive force. (*Id.*)

Echols also names as defendants the Kentucky Justice and Public Safety Cabinet, Miranda Rodgers Gray, Ed Jewell, and Cynthia Watson as Defendants.  (*Id.*)  The Kentucky Justice and Public Safety Cabinet is in the Executive Branch of Kentucky's state government and oversees the KDJJ.  KRS 15A.020(1)(c).  Miranda Rodgers Gray was employed as an investigator by IIB and conducted one of the investigations that resulted in a substantiated claim of excessive force against Mr. Echols.  (IIB Investigative Report 2808-19, RE 68-13, Page ID # 712 – 713.)  Ed Jewell is employed as a manager at IIB.  (Jewell Affidavit, RE 68-4, Page ID # 596.)  Cynthia Watson was a Human Resources Branch Manager at KDJJ.   (Watson Affidavit, RE 68-2, Page ID # 555.)

After the close of discovery, the KDJJ, Miranda Rodgers Gray, Ed Jewell and Cynthia Watson filed a motion for summary judgment.  (Motion for Summary Judgment, RE 68, Page ID # 531.)  In his response to the motion, Echols attempted

to contest the content of some of the videos that captured the excessive force incidents. (Response to Motion for Summary, RE 74, Page ID # 841.) Echols filed affidavits from former KDJJ employee Jose Soto that contested some of the findings of excessive force supported by the videos. (Soto Affidavits, RE 74-14, Page ID # 1050 – 1051; Response, RE 74-18, Page ID # 1068 - 1069.) KDJJ, Miranda Rodgers Gray, Ed Jewell, and Cynthia Watson filed a reply in which it was noted that the videos unambiguously demonstrated the incidents of excessive force. (Reply in Support of Motion for Summary Judgment, RE 77, Page ID # 1075 – 1078.) The videos were conventionally filed under seal to protect the confidentiality rights of the juveniles involved in the excessive force restraint incidents. (District Clerk's Receipt of Non-Electronic Document, RE 81; Order Granting Motion to File Exhibits Under Seal, RE 83.)[1]

On March 4, 2024, the Magistrate Judge entered Findings of Fact, Conclusions of Law, and Recommendation in which it was recommended that the motion for summary judgment be granted. (Findings of Fact, Conclusions of Law, and Recommendation, RE 84, Page ID # 1160 – 1182.) The well-reasoned Findings of Fact, Conclusions of Law, and Recommendation undertook a detailed review of the claims at issue and determined that summary judgment was appropriate for three

---

[1] Pursuant to 6 Cir. R. 10(b)(2)(B), KDJJ is currently requesting that the Circuit Clerk grant permission for the videos to be forwarded by the District Clerk to this Court.

primary reasons.  First, the claims against individual defendants Miranda Rodgers Gray, Ed Jewell and Cynthia Watson needed to be dismissed, because individuals that are not employers are not subject to personal liability under Title VII for alleged employment discrimination.  (*Id.*, Page ID # 1165.)  Second, KDJJ articulated a legitimate nondiscriminatory reason for the termination of Echols, the four (4) substantiated excessive force incidents. (*Id.*, Page ID # 1173 - 1174.)   Finally, the retaliation claim was dismissed, because Echols was not engaged in protected activity when he voiced general disagreement with the first two (2) investigative reports.  (*Id.*, Page ID # 1177 - 1181.)  The District Court determined that the general complaints by Echols were not protected activity as required to prove a Title VII retaliation claim. (*Id.*, Page ID # 1177 - 1181.)

On May 6, 2024, the District Court entered a Judgment adopting the Findings of Fact, Conclusions of Law, and Recommendation, granting the motion for summary judgment, and dismissing the claims against the KDJJ, Miranda Rodgers Gray, Ed Jewell, and Cynthia Watson.  (Order, RE 91, Page ID # 1211 – 1214.) Echols appealed.

## STANDARD OF REVIEW

This Court reviews a grant or denial of summary judgment *de novo*.  *Summers v. Leis*, 368 F.3d 881, 885 (6th Cir. 2004).  Summary judgment is appropriate when

14

citation to facts in the record demonstrate there are no genuine issues of material fact.  Fed. R. Civ. P. 56(c); *Celotex Cor. v. Catrett*, 477 U.S. 317, 322 (1986).

## SUMMARY OF THE ARGUMENT

The District Court properly granted summary judgment in favor of the KDJJ. First, there is no basis under law to assert liability under Title VII against the people that were named as defendants in their individual capacities.  While Title VII prohibits an employer from improper discrimination, Title VII is not intended to be used as a tool to assert individual capacity claims against other employees. *Wathen v. Gen. Elec. Co.*, 115 F.3d 400, 406 (6th Cir. 1997).

Further, there are no genuine issues of material fact regarding the IIB investigations that led to the dismissal of Echols.  Video evidence conclusively establishes that Echols engaged in excessive and inappropriate use of force against youth in KDJJ custody. Echols's attempts to create factual disputes through affidavits cannot overcome the clear video evidence.

Second, Echols failed to establish a prima facie case of racial discrimination, because he cannot identify similarly situated comparators who were treated more favorably.  None of the individuals that Echols compares with himself have a similar history of discipline.  None of the people that Echols compares with himself have a discipline history of four (4) substantiated IIB investigations for excessive force. (Watson Affidavit, RE 68-2, Page ID # 557.)

15

Additionally, the only relevant comparators are those who were subject to discipline by Commissioner Harris during her tenure.  During the time period when LaShana Harris was making discipline decisions as the KDJJ Commissioner, only two people on Echols's list of comparables were subject to discipline.  Those two people were former KDJJ employees David Wilkerson and Joshua Bell.  They had different histories of discipline and received discipline more severe than Echols.

Echols's attempts to expand the comparator pool through the "cat's paw" theory fail, because the IIB investigators were not supervisors with authority to take tangible employment actions.  Additionally, Echols did not raise the "cat's paw" argument in the District Court.  An argument not raised before the District Court is waived on appeal.  *Kitchen v. Whitmer*, 106 F.4th 525, 536 (6th Cir. 2024).

Finally, Echols failed to establish a prima facie case of retaliation. His general complaints about the IIB investigations do not constitute protected activity under Title VII. Moreover, he cannot demonstrate a causal connection between his general complaints to IIB and the adverse employment action, given the significant time gap and intervening events.

## **<u>ARGUMENT</u>**

## I.    **The Appeal Against Miranda Rodgers Gray, Ed Jewell, and Cynthia Watson is Frivolous.**

Echols invokes Title VII of the Civil Rights Act of 1964 in making his claims of employment discrimination based on race and retaliation.  Title VII prohibits an

employer from discrimination against an individual because of the individual's race. 42 U.S.C. § 2000e-2(a)(1). While Title VII prohibits an employer from improper discrimination, Title VII is not intended to be used as a tool to assert individual capacity claims against other employees. *Wathen*, 115 F.3d at 406. Plaintiffs cannot bring individual capacity claims under Title VII, unless individuals are employers in their individual capacities. *Wathen*, 115 F.3d at 406.

In this case, Echols has asserted Title VII claims against not only the KDJJ as his former employer, but also against Miranda Rodgers Gray, Ed Jewell, and Cynthia Watson. None of these individuals employed Echols. As such, his claims against Miranda Rodgers Gray, Ed Jewell, and Cynthia Watson are precluded by operation of law.

In District Court, Echols did not contest this aspect of the motion for summary judgment regarding the claims against Miranda Rodgers Gray, Ed Jewell, and Cynthia Watson. (Echols Response to Motion for Summary Judgment, RE 74-1.) The District Court expressly explained to Echols that Congress did not intend individuals to face liability under the definition of 'employer' it selected for Title VII. (Findings of Fact, Conclusions of Law, and Recommendation, RE 84, Page ID # 1165.) Despite this, Echols named Miranda Rodgers Gray, Ed Jewell, and Cynthia Watson as Appellees in their individual capacities in this proceeding.

Under Fed. R. App. P. 3(c)(6), Echols could have designated only part of the judgment of the District Court for inclusion in this appeal by expressly stating that his notice of appeal was so limited. In this Title VII employment discrimination case, Echols could have chosen to appeal only the portion of the District Court decision that granted summary judgment to his former employer, KDJJ. Unfortunately, Echols appealed the entire judgment and decided to frivolously name Miranda Rodgers Gray, Ed Jewell, and Cynthia Watson as Appellees in their individual capacities in this proceeding. The frivolous nature of this aspect of the appeal is demonstrated by the complete failure of Echols in his Brief to even attempt to articulate any theory of liability against Miranda Rodgers Gray, Ed Jewell, or Cynthia Watson. Similarly, Echols makes no effort to articulate any theory of liability against the Kentucky Justice and Public Safety Cabinet.

## II.    The District Court Properly Granted Summary Judgment to KDJJ, Because There Were No Genuine Issues of Material Fact.

### A.    Video Evidence Conclusively Established the Factual Basis for the IIB Investigations.

While courts generally view facts in the light most favorable to the non-moving party at summary judgment, there is an exception when the record contains video evidence that "blatantly contradict[s]" the non-moving party's version of events. *Scott v. Harris*, 550 U.S. 372, 380 (2007). In such cases, courts should view "the facts in the light depicted by the videotape." *Id*. at 381. When considering a

motion for summary judgment that includes relevant video evidence, courts view the facts in the light depicted by the video. *Scott*, 550 U.S. at 378 - 381. In disposing of a motion for summary judgment, a court need draw only reasonable inferences in favor of a nonmoving party. The court need not construe the record in a manner that is unsupportable by a video recording of the relevant events. *Shreve v. Franklin Cty., Ohio*, 743 F.3d 126, 132 (6th Cir. 2014).

The video evidence is particularly helpful in this case, because Echols attempts to simply deny incidents depicted by the videos. For example, one of the reasons that Echols received discipline leading up to his termination of employment was an incident in which he pushed a youth in the back. Echols filed affidavits from former KDJJ employee Jose Soto that contested some of the findings of excessive force supported by the videos. (Soto Affidavits, RE 74-14, Page ID # 1050 – 1051; Response to Motion for Summary Judgment, RE 74-18, Page ID # 1068 - 1069.) Soto was previously disciplined by the KDJJ for misconduct and is involved in litigation with the KDJJ regarding that discipline. (Soto Personnel Board Appeal, RE 77-1 Page ID # 1083 – 1087.) Other than the inaccurate affidavit from a former employee, Echols merely denies that the incident happened without elaboration.

Despite his attempt to deny that he pushed the youth in the back and the affidavit mischaracterizing the incident, the video shows that Echols did shove a youth in the back. Approximately one (1) minute and forty-eight (48) seconds into

the video, Echols is seen pushing the youth in the back and then taking the youth down to the ground. The youth was not threatening anyone or causing a disturbance when Echols pushed the youth in the back and took the youth down. Echols's mere denial of pushing the youth in the back does not create a fact dispute considering the contents of the video.

Similarly, Echols makes an unsupported denial of an incident in which he ran into a room and aggressively restrained a youth that was laying down on two chairs. This incident was particularly troubling, because the youth was not hurting anyone or damaging any property when Echols yanked the youth up off the chairs and aggressively restrained the youth.

While Echols denies that he engaged in the misconduct, the video clearly demonstrates his behavior during the incident. Approximately four (4) minutes and five (5) seconds into the video, Echols is seen running into a room and aggressively restraining a youth that was laying down on two chairs. While Echols attempts to deny the incident, the video unambiguously demonstrates that he ran into a room and aggressively restrained a youth that was laying down on two chairs.

Echols attempts to dispute these incidents through conclusory denials and affidavits, but he cannot overcome the clear video evidence. His subjective belief that the IIB investigations were unfounded cannot create genuine issues of material fact in the face of objective video evidence showing his improper use of force.

Further, there is no dispute that KDJJ relied on the investigative reports from IIB in making its decision to discipline Echols. Even if the IIB reports substantiating the excessive force claims against Echols were mistaken, it was not discriminatory for KDJJ to take disciplinary action based on the substantiated reports that were presented to KDJJ.

**B.    Echols's Attempts to Create Factual Disputes Through Affidavits Fail.**

To survive summary judgment, the non-moving party must present more than a "scintilla of evidence" supporting his position. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). Echols relies heavily on affidavits from Jose Soto, but these affidavits are insufficient to create genuine factual disputes. First, Soto's affidavits contain conclusory statements that contradict the video evidence. Courts need not accept such statements when they are "blatantly contradicted by the record." *Scott*, 550 U.S. at 380. Second, Soto's affidavits focus on justifying the use of force rather than disputing whether the force occurred. This misses the point - the issue is whether Echols used excessive force in violation of KDJJ policies.

**III.   Echols Fails to Establish a Prima Facie Case of Racial Discrimination.**

**A.    Echols Fails to Identify Similarly Situated Comparators.**

To establish a prima facie case of discrimination, Echols must show that he was treated differently than similarly situated non-minority employees. *White v. Baxter Healthcare Corp.,* 533 F.3d 381, 391 (6th Cir. 2008). To be deemed similarly

situated, comparators must have: 1) dealt with the same supervisor; 2) been subject to the same standards; and 3) engaged in the same conduct without differentiating circumstances. *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 583 (6th Cir. 1992).

In the instant action, Echols attempts to prove a *prima facie* case by alleging that he was treated differently than similarly situated non-protected employees. (Echols Deposition, RE 68-3, Page ID # 592 – 594.)  He alleges that certain KDJJ employees committed similar misconduct, but did not receive as severe of a level of discipline.  The other individuals that Echols compares himself to are Nathaniel Lumpkins, Brent Kimbler, Jeremy Baker, Thomas Langston, Jeffrey Overstreet, Greg Saylor, Caleb Sanders, David Wilkerson, Joshua Bell, Earl Henderson, Casey Barnes, Jezreel Bell, and Lucas Sublett.  (*Id.*, Page ID # 592 – 594.)

However, two of the individuals that Echols compares himself to are African American.  Both Jeremy Baker and Jeffrey Overstreet are African American. (Watson Affidavit, RE 68-2, Page # ID 557.)  In order to prove a *prima facie* case, Echols must prove he was treated differently than similarly situated non-minority employees. *White*, 533 F.3d at 391.  Echols's that other African American employees committed similar misconduct but received less severe discipline undermines his discrimination claim.

Moreover, none of the individuals that Echols compares with himself have a similar history of discipline.  None of the people that Echols compares with himself

have a discipline history of four (4) substantiated IIB investigations for excessive force. (Watson Affidavit, RE 68-2, Page ID # 557.) While Echols simply alleges that other employees engaged in similar conduct without being dismissed, he failed to identify even one other employee with a discipline history of four (4) substantiated investigations of excessive force. As the Court stated in *Mitchell v. Toledo Hosp.*:

> It is fundamental that to make a comparison of a discrimination plaintiff's treatment to that of non-minority employees, the plaintiff must show that the "comparables" are similarly situated *in all respects*. Thus, to be deemed "similarly-situated", the individuals with whom the plaintiff seeks to compare his/her treatment must have dealt with the same supervisor, have been subject to the same standards and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it.

964 F.2d at 583 (6th Cir. 1991) (internal citation omitted) (citations omitted). *See also Jackson v. VHS Detroit Receiving Hosp., Inc.*, 814 F.3d 769, 779-80 (6th Cir. 2016) ("Demonstrating pretext using this method 'ordinarily . . . consists of evidence that other employees, particularly employees not in the protected class, were not fired even though they engaged in substantially identical conduct to that which the employer contends motivated its discharge of the plaintiff.'" (citation omitted)). Echols engaged in different misconduct, and he is not similarly situated to the people that he lists as comparables.

Further, Echols did not deal with the same supervisor as the people he lists as comparables. The individual employed as the KDJJ Commissioner is the

"appointing authority" for the KDJJ and makes the final decisions with regard to discipline of KDJJ employees for misconduct. (Watson Affidavit, RE 68-2, Page ID # 557); KRS 18A.095(7). At the time the decision had to be made regarding the level of discipline to be imposed for Echols's fourth substantiated use of excessive force in restraining youth, LaShana Harris was the KDJJ Commissioner. (Watson Affidavit, RE 68-2, Page ID # 557.) Harris worked as the KDJJ Commissioner and made discipline decisions at the KDJJ from December 11, 2019 to December 23, 2020. (*Id.*, Page ID # 557.)

During the time period when Harris was making discipline decisions as the KDJJ Commissioner, only two people on Echols's list of comparables were subject to discipline. Those two people were former KDJJ employees David Wilkerson and Joshua Bell. (*Id.*, Page ID # 557.) David Wilkerson was fired by the KDJJ on September 22, 2020, for getting into a physical altercation with a coworker in which he used a weapon to assault the coworker. David Wilkerson previously received a five-day suspension for his <u>first</u> substantiated use of excessive force, and Harris decided to dismiss him for getting into the physical altercation with a coworker. (*Id.*, Page ID # 558.) Harris made the decision for the KDJJ to suspend Joshua Bell for three days on or about September 1, 2020, as a consequence for Bell's <u>first</u> substantiated use of excessive force. Bell had no prior history of discipline when LaShana Harris made this decision. (*Id.*, Page ID # 558.) In comparison, Echols

24

only received a one (1) day suspension for his first two (2) substantiated uses of excessive force.  (Echols Suspension Letter, RE 68-9, Page ID # 698 – 700.)

The vast majority of the individuals that Echols attempts to compare himself with are not similarly situated to him, because they did not deal with the same decision maker at the times that they were subject to discipline.  It is a fundamental requirement that to make a comparison of a discrimination plaintiff's treatment to that of non-minority employees, the plaintiff must show that the individuals with whom the plaintiff seeks to compare his/her treatment must have dealt with the same supervisor.  *Mitchell*, 964 F.2d at 583.  LaShana Harris was the KDJJ Commissioner that made the decision to dismiss Echols, and the only other people on his list of comparables that were subject to discipline while Harris was Commissioner had substantially different conduct and discipline histories.

The trial court found no evidence of pretext in KDJJ's termination of Echols for the four substantiated findings of excessive force. The court succinctly summed up Echols's failure to show circumstantial evidence of discrimination, finding:

> Considering the circumstances of the other two comparator employees, it is evident that they did not receive more lenient treatment for similar violations of agency policy. Bell was suspended for one day on his first substantiated IIB investigation. Echols was suspended for one day based on two substantiated IIB investigations.
>
> While Wilkerson was subject to IIB investigation three times, he was suspended for five days after his first *substantiated* IIB investigation and terminated after his second substantiated IIB investigation. Echols

was suspended for one day after two substantiated IIB investigations and terminated after his fourth substantiated IIB investigation. In sum, the undersigned concludes that Echols has not demonstrated that the reason advanced by the KDJJ for terminating his employment was a pretext and that the true motivating factor was racial discrimination.

(Findings of Fact, Conclusions of Law, and Recommendation, RE 84, Page ID # 1177; Order Adopting Findings of Fact, Conclusions of Law, and Recommendation, RE 91, Page ID # 1211 - 1214)

Echols fails to identify any other employee that had four (4) substantiated investigations for excessive force in restraint of youth.  Instead, Echols focuses on the number of investigations, both substantiated and unsubstantiated, against other employees.  (Echols Brief, pp. 16 – 17. )  However, this misses the point.  From the employer's perspective, an unsubstantiated investigation into alleged misconduct is generally not a basis for issuing disciplinary action.  Substantiated investigations are the appropriate focus for disciplinary action.  The attempt by Echols to argue that other employees had more investigations, including unsubstantiated investigations, fails in light of the fact that no other KDJJ had four *substantiated* investigations for using excessive force while restraining youth.

**B.    The "Cat's Paw" Theory Does Not Apply.**

Echols attempts to expand his comparator pool by arguing that IIB manager Ed Jewell was a supervisor under the "cat's paw" theory.  However, Echols did not argue prior to the entry of judgment by the District Court that Jewell was a supervisor

under the "cat's paw" theory.  Echols raises the "cat's paw" theory for the first time in his Appellant Brief.  An argument not raised before the District Court is waived on appeal.  *Kitchen v. Whitmer*, 106 F.4th 525, 536 (6th Cir. 2024).  As such, the Court should not consider the "cat's paw" argument raised by Echols for the first time on appeal.

Even if Echols had preserved the "cat's paw" contention for appeal, this argument fails.  The "cat's paw" theory of liability is a legal doctrine that holds employers responsible for employment discrimination when a biased supervisor influences the ultimate decision-maker to take adverse action against another employee.  *Staub v. Proctor Hosp.*, 562 U.S. 411, 415 – 416 (2011).  However, Jewell was employed by IIB, not KDJJ.  (Jewell Affidavit, RE 68-4, Page ID # 596.)   The KDJJ Commissioner retains ultimate authority over employment decisions for KDJJ employees.  Jewell was not even an employee of KDJJ much less a supervisor.  In addition, there was no evidence developed demonstrating that Jewell was motivated by discriminatory animus.  While the evidence showed that Jewell did accept a phone call from Echols and listened to him generally disagree with the outcomes of the first two (2) investigations, there was no indication that Jewell said or did anything racist.  As such, the "cat's paw" theory of liability is not applicable to this proceeding.

**IV.    Echols Fails to Establish a Prima Facie Case of Retaliation.**

**A.    Echols Did Not Engage in Protected Activity.**

Title VII prohibits retaliation against employees who oppose discrimination or participate in proceedings under the statute.  In order to prove a prima facie claim of retaliation under Title VII, Echols must demonstrate the following: "(1) he engaged in activity protected by Title VII; (2) the exercise of his civil rights was known to the defendant; (3) thereafter, the defendant took an employment action adverse to the plaintiff; and (4) there was a causal connection between the protected activity and the adverse employment action." *Nguyen v. City of Cleveland*, 229 F.3d 559, 563 (6th Cir. 2000) (citation omitted).

Merely complaining about unfair treatment, without alleging discrimination based on a protected characteristic, is not protected activity.  Echols claims he engaged in protected activity when he: 1) called the IIB to dispute investigation findings; and 2) wrote a letter disagreeing with the outcome of the investigations. (Echols Deposition, RE 68-3, Page ID # 575 – 579.) Neither constitutes protected activity. Echols was simply expressing disagreement with the investigations' outcomes. He did not allege that the investigations were motivated by racial discrimination or otherwise engage in activity protected by Title VII.

**B.    There is No Causal Connection Between Any Protected Activity and the Adverse Employment Actions.**

Even if Echols had engaged in protected activity, he cannot establish the required causal connection to his suspension or termination. There is no evidence that former KDJJ Commissioner Harris had any knowledge about the 2017 phone call from Echols to the IIB when she made the decision to dismiss him in 2020.  The IIB is a separate and distinct entity from the KDJJ.  500 KAR 13:020.  Echols has failed to develop any evidence that Commissioner Harris knew anything about the phone call to the IIB.   This significant time gap, combined with the intervening substantiated instances of misconduct, breaks any causal chain.

## CONCLUSION

The KDJJ had legitimate, nondiscriminatory reasons for dismissing Echols. In particular, the KDJJ dismissed Echols for engaging in unjustified and excessive force restraints against youth in KDJJ custody.  Echols is not similarly situated to other KDJJ employees with which he attempts to compare with himself.  Echols engaged in different misconduct, and, therefore, he is not similarly situated to the people that he lists as comparables.  The IIB substantiated four instances of Echols using excessive force in the restraint of youth.  Presented with this fact, the KDJJ simply exercised its business judgment to dismiss Echols. Further, the claim of retaliation must be dismissed, because calling an investigative agency to make a

general statement of disagreement about the outcome of an investigation is not an activity protected by Title VII.

Importantly, the KDJJ has an obligation to provide protection for youth that are in its custody. As such, the KDJJ has an enhanced responsibility for dismissing employees that engage in unjustified and excessive force restraints against youth on multiple occasions. For the foregoing reasons, this Court should affirm the District Court's Order granting summary judgment to Defendants-Appellees.

Respectfully submitted,

/s/ William F. Codell
William F. Codell
Justice & Public Safety Cabinet
125 Holmes Street, Second Floor
Frankfort, Kentucky 40601
502-573-2738
William.Codell@ky.gov
Attorney for Appellees

## CERTIFICATE OF COMPLIANCE

I certify that this brief complies with Fed. R. App. P. 32(a)(7)(B) and contains 7,337 words, excluding the parts exempted by Fed. R. App. P. 32(f).

This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6), because this document has been prepared in a proportionally spaced typeface using Microsoft Word Version 2402 in 14-point Times New Roman font.

/s/ William F. Codell
William F. Codell


## CERTIFICATE OF SERVICE

I certify that on November 18, 2024, I electronically filed this brief with the Clerk of Court using the CM/ECF system, which will send notification to all counsel of record.

/s/ William F. Codell
William F. Codell

## DESIGNATION OF RELEVANT DISTRICT COURT DOCUMENTS

| Record No. | Description | Page ID# |
|---|---|---|
| 1 | Complaint | 1 - 10 |
| 7 | Amended Complaint | 21 - 64 |
| 68 | Motion for Summary Judgment | 531 |
| 68-1 | Memo in Support of Motion for Summary Judgment | 533 - 554 |
| 68-2 | Affidavit of Cynthia Watson | 555 - 558 |
| 68-3 | Transcript of Echols Deposition | 559 - 595 |
| 68-4 | Affidavit of Ed Jewell | 596 - 598 |
| 68-5 | IIB Investigative Report 2721-17 | 599 - 645 |
| 68-6 | First Major Corrective Action Request | 646 - 647 |
| 68-7 | IIB Investigative Report 2722-17 | 648 - 695 |
| 68-8 | Second Major Corrective Action Request | 696 - 697 |
| 68 - 9 | Suspension Letter | 698 - 700 |
| 68-10 | KDJJ Policy 104 | 701 - 704 |
| 68-11 | Affidavit of William Campbell | 705 - 706 |
| 68-12 | KDJJ Policy 324 | 707 |
| 68-13 | IIB Investigative Report 2808-19 | 712 - 758 |
| 68-14 | Third Major Corrective Action Request | 759 - 760 |
| 68-15 | IIB Investigative Report 7825-19 | 761 - 803 |
| 68-16 | Fourth Major Corrective Action Request | 804 - 805 |
| 68-17 | Affidavit of George Scott | 806 - 807 |
| 68-18 | Dismissal Letter | 808 - 810 |
| 68-19 | KDJJ Policy 106.6 | 811 - 813 |
| 68-20 | KDJJ EEO Policy Receipt | 816 |
| 74-1 | Response to Motion for Summary Judgment | 830 - 858 |
| 77 | Reply to Response to Motion for Summary Judgment | 1074 - 1082 |
| 77-1 | Soto Personnel Board Appeal | 1083 - 1087 |
| 81 | Videos of Restraints | |
| 84 | Findings of Fact, Conclusions of Law, and Recommendation | 1160 - 1182 |
| 91 | Order Adopting Findings of Fact, Conclusions of Law, and Recommendation | 1211-1214 |