No. 24-5715

# IN THE UNITED STATES COURT OF APPEALS FOR THE SIXTH CIRCUIT

_____

ROSCOE D. ECHOLS
Plaintiff-Appellant,

v.

KENTUCKY JUSTICE AND PUBLIC SAFETY CABINET, ET AL
Defendant-Appellees.

_____

On Appeal from the Decision of the
United States District Court for the
Western District of Kentucky
Bowling Green Division
No. 1:21-cv-000131-GNS-HBB

_____

**REPLY BRIEF OF PLAINTIFF-APPELLANT ROSCOE D. ECHOLS**

_____

**ROBERT L. THOMPSON**
KY: 98791
Thompson Legal LLC
10529 Timberwood Circle, Unit B
Louisville, KY 40223
P: 502-366-2121
F: 502-438-9999
Robert@RthompsonLegal.com

*Counsel for Plaintiff-Appellant*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................... ii

SUMMARY OF THE ARGUMENT ....................................................................... 1

ARGUMENT ............................................................................................................ 2

    A.   Summary Judgement is Improper Because Mr. Echols Established a Genuine Issue of Material Fact Through Conflicting Evidence on The Record. ................. 2

        1.   Defendant's Superintendent Curtis Fincher Found No Video Evidence of Mr. Echol's Pushing The Youth in The Back in Investigation 2721-17. .............. 2

        2.   The Video Evidence Does Not Blatantly Contradict Mr. Soto's Affidavits. 3

    B.   Mr. Echols Has Established a *Prima Facie* Case of Discrimination. .............. 5

        1.   Cats Paw Theory May be Raised on Appeal. .............................................. 5

        2.   Ed Jewell Qualifies as a Supervisor. .......................................................... 6

        3.   Mr. Echols Has Established Similarly Situated Comparators ..................... 7

    C.   Mr. Echols Has Established a *Prima Facie* Case of Retaliation. .................... 9

# TABLE OF AUTHORITIES

## Cases

*Anderson v. Liberty Lobby, Inc.,* 106 S. Ct. 2505 (1986)……………………………….3

*Burlington Indus. v. Ellerth,* 524 U.S. 742, 118 S. Ct. 2257 (1998)………………….7

*Foster v. Barilow,* 6 F.3d 405, 407 (6th Cir. 1993)……………………………………..6

Bar v. Kalitta Charters II LLC, No. 23-2009, 2024 U.S. App.

  (6th Cir. Aug. 30, 2024) …………………………………………………......9

Craig-Wood v. Time Warner NY Cable LLC,

  549 F. App'x 505 (6th Cir. 2014)……………………………………….....8

*Marshall v. Rawlings Co. LLC,* 854 F.3d 368 (6th Cir. 2017) …………………........6

*McFarland v. Henderson,* 307 F.3d 402 (6th Cir. 2002)………………………….….5

*Singleton v. Wulff,* 428 U.S. 106, 96 S. Ct. 2868 (1976)……………………………….5

*Scott v. Harris,* 550 U.S. 372, 127 S. Ct. 1769 (2007)………………………………...2

*Vance v. Ball State Univ.,* 133 S. Ct. 2434 (2013) …………………….……………7

Weaver v. Shadoan, 340 F.3d 398 (6th Cir. 2003)…………………………………….3

## SUMMARY OF THE ARGUMENT

Mr. Echols presented sufficient evidence to establish a genuine issue of material fact, warranting denial of summary judgment. He has made a *prima facie* case for both discrimination and retaliation, demonstrating unlawful treatment and subsequent adverse actions in response to his complaints.

# ARGUMENT

A. **Summary Judgement is Improper Because Mr. Echols Established a Genuine Issue of Material Fact Through Conflicting Evidence on The Record.**

1. <u>Defendant's Superintendent Curtis Fincher Found No Video Evidence of Mr. Echol's Pushing The Youth in The Back in Investigation 2721-17.</u>

Defendant alleges that a blurry video is conclusive in determining whether Mr. Echols pushed a youth in the back. If "the record blatantly contradicts the plaintiff's version of events **so that no reasonable jury could believe it**, a court should not adopt that version of the facts for purposes of ruling on a summary judgment motion." *Scott v. Harris*, 550 U.S. 372, 127 S. Ct. 1769 (2007). However, Defendant's own employee, Superintendent Curtis Fincher reviewed the video and determined that "no evidence could be located on the facility video which showed Mr. Echols pushing [Redacted] in the back... Based on the information provided by Mr. Fincher, the report was deemed Unfounded." Exhibit C, RE 68-5, Page ID #600. This is also corroborated by the report of the Nurse who treated the youth following the incident which stated, "no bruising, redness or marks on back". *Id*. at, Page ID# 634. Defendant's IIB Investigation report for Investigation 2721-17 provides conflicting testimony on whether Mr. Echols pushed the youth. Mr. Fincher himself stated that he did not see Mr. Echols push a youth. Therefore, the blurry video of Mr. Echols and the youth should not be deemed conclusive since Defendant's own

employee viewed it and came to a different conclusion than Defendant's current position.

   2. <u>The Video Evidence Does Not Blatantly Contradict Mr. Soto's Affidavits.</u>

Defendant is attempting to invalidate Mr. Soto's affidavits, alleging that solely because of the existence of video evidence, his firsthand testimony of the incident is inconsequential. Defendant is also attempting to put Mr. Soto's credibility in question; however, Mr. Soto's credibility is outside the purview of this Appeal. "In deciding a summary judgment motion, we cannot weigh the evidence, judge the credibility of witnesses, or determine the truth of the matter asserted." *Weaver v. Shadoan,* 340 F.3d 398 (6th Cir. 2003). However, in summary judgement "[t] he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (quoting *Adickes*, 398 U.S., at 158-159.) As stated by Defendant in their response, the issue is whether Echols used excessive force. Mr. Soto's Affidavits state that Mr. Echols use of force was warranted given the situation. This does not blatantly contradict the video it provides a firsthand opinion on the situation. For example, in Mr. Soto's Affidavit regarding IIB Investigation 2722-17 he does not deny that Mr. Echols used force, he stated that it was justified because the youth was acting extremely aggressive, using vulgar language, and jerking away from Mr. Echols. Soto Affidavit

JS, RE 74-14, Page ID# 1050-1051. Additionally, in IIB Investigation 2825-19, Mr. Soto states Mr. Echols properly restrained the youth using a KDJJ approved move the ACT control three restraint. Soto Affidavit JS3, RE 74-18, Page ID# 1068. Blurry security camera footage is not replacement for firsthand experience. Mr. Soto personally witnessed both of these incidents, and his testimony should be taken into consideration. Mr Soto's affidavits provide a very different story than was alleged in IIB Investigations 2722-17, and 2825-19, and must be taken as true for the purposes of summary judgement.

    In light of the conflicting evidence on the record, summary judgment is improper in this case. Defendant's reliance on a blurry and inconclusive video does not overcome the testimony of its own superintendent, Mr. Fincher, who reviewed the footage and determined there was no evidence of misconduct by Mr. Echols. Furthermore, Mr. Soto's firsthand affidavits, which support the reasonableness of Mr. Echols' actions, are entitled to credence under established summary judgment principles. It is not the court's role at this stage to weigh evidence, assess credibility, or resolve factual disputes. Viewing the evidence in the light most favorable to Mr. Echols, as required, the record clearly demonstrates genuine issues of material fact that must be resolved by a jury. Therefore, granting summary judgement in favor of Appellee/Defendant was improper.

**B.    Mr. Echols Has Established a *Prima Facie* Case of Discrimination.**

1. <u>Cats Paw Theory May be Raised on Appeal.</u>

Plaintiff is aware that in general, issues not presented to the district court but raised for the first time on appeal are not proper. However, "[t]he matter of what questions may be taken up and resolved for the first time on appeal is one left primarily to the discretion of the courts of appeals, to be exercised on the facts of individual case." *Singleton v. Wulff*, 428 U.S. 106, 96 S. Ct. 2868 (1976). Under these circumstances, applying the cats paw theory to an action that has litigated the issue of racial discrimination since its inception does not fall under the purview of a waived issue. The new argument rule "serves, among other things, to promote judicial economy." *McFarland v. Henderson*, 307 F.3d 402 (6th Cir. 2002). The introduction of cats paw liability does not hinder the judicial economy of this appeal because it falls under the framework of the issue of racial discrimination. "[I]t may be appropriate to consider a new issue on appeal if it is presented with sufficient clarity and completeness for us to resolve the issue. *Id.* (internal citations omitted). Under cats paw liability, Ed Jewell is deemed a supervisor and Mr. Echols comparator pool is expanded substantially. For this issue to be tried completely Mr. Echols should be able to argue cats paw liability in regard to racial discrimination.

Cats paw liability is a niche theory, occasionally applied in employment discrimination cases. Mr. Echols, who represented himself *pro se* in the lower court,

should not be penalized for lacking the knowledge and resources that an attorney possesses. Courts in the Sixth Circuit have "deviated from the general rule in exceptional cases or particular circumstances, or when the rule would produce a plain miscarriage of justice." *Foster v. Barilow,* 6 F.3d 405, 407 (6th Cir. 1993). Given the complexity of cat's paw liability and the equitable principles underlying the court's discretion, this is such a case. Denying Mr. Echols, the opportunity to fully present his claims would undermine the pursuit of fairness and justice. Accordingly, the court should allow his arguments to proceed and consider the merits of his claims.

    2. <u>Ed Jewell Qualifies as a Supervisor.</u>

Cat's paw liability refers to a scenario where a biased subordinate manipulates a formal decision-maker into implementing a discriminatory employment action. *Marshall v. Rawlings Co. LLC,* 854 F.3d *368*, 377. "A plaintiff alleging liability under the cat's paw theory seeks 'to hold his employer liable for the animus of a supervisor who was not charged with making the ultimate employment decision.'" *Id*. In Mr. Echols's case, Special Investigative Agent Manager Ed Jewel serves as the biased supervisor under the cat's paw theory.

An employee is a "'supervisor' for purposes of vicarious liability under Title VII if he or she is empowered by the employer to take tangible employment actions against the victim. *Vance v. Ball State Univ.*, 570 U.S. 421, 424. The term tangible

employment action "encompasses any 'significant change in employment status . . . or a decision causing a significant change in benefits.'" *Burlington Indus. v. Ellerth*, 524 U.S. 742, 118 S. Ct. 2257 (1998).

Ed Jewell, the Special Investigative Agent Manager for the IIB, oversees all IIB investigations and reports his findings to the KDJJ, which then determines corrective actions. Jewell Affidavit, RE 68-4, Page ID# 596. While Jewell is not the final decisionmaker, he qualifies as a supervisor under the cat's paw theory because his reports influence corrective actions against employees with substantiated IIB investigations. *Id*. Unlike LaShonda Harris, who supervised only two employees subject to reprimands, Jewell exercised supervisory authority over all KDJJ employees across multiple locations throughout Mr. Echols's employment. Motion for Summary Judgement, RE 68-1, Page ID# 546; Jewell Affidavit, RE 68-4, Page ID# 596. This broader authority expands Mr. Echols's comparator pool beyond the limited scope imposed at summary judgment.

3. Mr. Echols Has Established Similarly Situated Comparators.

To qualify as a comparator, an individual must be "subject to the same standards and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." *Craig-Wood v. Time Warner NY Cable LLC,* 549 Fed. Appx. 505, 509-510 (6th Cir. 2014). (internal citations omitted). Nathenial Lumpkins, a

Caucasian employee who worked for the KDJJ during the same period as Mr. Echols and performed the same job duties, was treated differently due to his race. Exhibit D, RE 74-8, Page ID# 1003. Despite an extensive record of violations, Mr. Lumpkins was not terminated until his sixth substantiated IIB investigation. Exhibit 5, RE 74-5, Page ID# 1221. Mr. Lumpkins violations were substantially more grievous in that he punched youth in the head multiple times, he spit on a youth, and even went to far as to break the arm of a youth. *Id*. at Page ID# 1221, 1226, 1295. This stark disparity in treatment underscores the racially discriminatory practices of the KDJJ, as Mr. Lumpkins was retained despite repeated and severe violations, while Mr. Echols faced termination under markedly different circumstances.

Earl Henderson, a Caucasian employee of the KDJJ, performed the same duties as Mr. Echols and was subject to the same investigatory process under Mr. Jewell. Exhibit D, RE 74-8, Page ID# 1002. Despite being involved in 12 IIB investigations, eight more than Mr. Echols., Mr. Henderson was allowed to continue working for Defendant. *Id*. Similarly, Jason Johnson, another Caucasian employee with the same job duties, used improper restraints on juveniles but was never investigated by Ed Jewell or the IIB. Exhibit J4, RE 74-6, Page ID# 992-993.

These examples demonstrate clear disparities in the treatment of similarly situated employees, highlighting how Mr. Echols was subjected to harsher

consequences due to his race and raising serious concerns about the fairness and credibility of the KDJJ and IIB investigative processes.

### C. Mr. Echols Has Established a *Prima Facie* Case of Retaliation.

Mr. Echols has established a *prima facie* case of retaliation by demonstrating that he engaged in two protected activities, both of which were known to the defendant, and that these activities led to materially adverse actions. To establish a prima facie case, a plaintiff must prove that they ,"1) engaged in a protected activity; 2) [the] exercise of such protected activity was known by the defendant; 3) the defendant subsequently took an action that was materially adverse to the plaintiff; and 4) a causal connection existed between the protected activity and the materially adverse action." *Bar v. Kalitta Charters II LLC,* 2024 U.S. App. LEXIS 22216, *4.

Mr. Echols engaged in two protected activities: first, he made a telephone call to Ed Jewell and the IIB between August and November 2017, during which he disagreed with the decisions in his two investigations, asserting they were racially motivated and requesting a neutral third-party investigation. Echols Transcript, RE 68-3, Page ID# 576. Second, on September 21, 2017, Mr. Echols sent a letter to IIB expressing concerns about the findings and requesting both reports for verification. Exhibit 21, RE 74-17, Page ID# 1067. Mr. Jewell was aware of both actions, as they were directed towards him.

In response to these complaints, Appellee/Defendant took three adverse employment actions. On July 2, 2019, the IIB opened Investigation 2808-19, which was substantiated after a brief inquiry (Exhibit L, RE 68-13, Page ID# 712); on September 7, 2019, the IIB opened Investigation 2825-19, which was also substantiated (Exhibit N, RE 68-15, Page ID# 761); and on January 13, 2020, KDJJ Commissioner LaShana Harris notified Mr. Echols of his termination, citing the four substantiated investigations as the reason for his discharge. Exhibit Q, RE 68-18, Page ID# 808-809.

Mr. Echols has demonstrated that he engaged in two protected activities, both of which were known to the defendant, and that these activities directly led to materially adverse actions, including multiple investigations and his eventual termination. This establishes a clear causal connection between his protected activities and the adverse employment actions.

## CONCLUSION

Accordingly, this Court should reverse the Trial Court's order dismissing Plaintiff-Appellant Echols's action because he has established a genuine issue material fact, a *prima facie* case of racial discrimination, and a *prima facie* case of retaliation.

## CERTIFICATE OF COMPLIANCE

I hereby certify pursuant to Fed. R. App. P. 32(g) that the foregoing brief complies with the word count limitation. As determined by the word count feature in Microsoft Word, the brief contains 2,449 words.

*/s/ Robert L. Thompson*

## CERTIFICATE OF SERVICE

I, Robert Thompson., certify that this brief was served upon Appellees' Counsel via this Court's electronic notification system, as well as email, on this 9th day of December 2024.

*/s/ Robert L. Thompson*